# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

JEREMY PINSON,                                    Case No. 18-CV-3420-NEB-KMM

                Plaintiff,

v.                                                **REPORT AND**
                                                  **RECOMMENDATION**

FNU HADAWAY, FNU JORDAN,
FEDERAL BUREAU OF PRISONS,
and UNITED STATES OF AMERICA,

                Defendants.

---

       This matter is before the Court on several motions:  defendants Dr. Sheila Hadaway, Dr. Nancy Jordan, Federal Bureau of Prisons, and the United States of America (collectively, "Defendants")'s Motion to Dismiss (ECF No. 30), plaintiff Jeremy (Grace) Pinson's Motion to Amend (ECF No. 51), and Ms. Pinson's Motion for Preliminary Injunction (ECF No. 65).  After careful consideration, the Court recommends that the Defendant's Motion be GRANTED and Ms. Pinson's Motions be DENIED.

## I.      Factual Background

       Ms. Pinson is currently incarcerated at the United States Penitentiary in Tucson, Arizona, but her complaint arises from when she was incarcerated at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester").  She is a transgender woman who has been "out," or openly identifying as transgender, since 2014.  (Compl. At 7.)  Transgender individuals may suffer from a condition called gender dysphoria, which is characterized by clinically significant distress resulting from an incongruence between the sex they were assigned at birth and the gender

with which they identify.[1]  Untreated gender dysphoria can result in severe mental health consequences, such as anxiety, depression, and suicidal tendencies.  Treatment for gender dysphoria is highly individualized.  Gender dysphoria treatment can involve any combination of the following: social transition,[2] hormone therapy, psychotherapy, or surgery. World Professional Association for Transgender Health, *The Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People* ("*The Standards of Care*") at 5 (7th ed. 2012).

## A.    Allegations

Ms. Pinson alleges that when she arrived FMC Rochester, she was participating in hormone replacement therapy and taking anti-anxiety medications to treat her gender dysphoria.  (Compl. At 8.)  While at FMC Rochester, she alleges that she regularly "clashed" with the Associate Warden Birkholz and Warden Paul regarding Bureau of Prisons policies.  (*Id.* at 8–9.)  She also asserts that they told her they would cause her hormone therapy and antianxiety medications to be discontinued.  (*Id.* at 9.)  Ms. Pinson alleges that Warden Paul and Associate Warden Birkholz followed through on this threat, and that at the end of her incarceration at FMC Rochester, she was informed by Dr. Hadaway that on the order of the warden, Dr. Hadaway was gradually reducing Ms. Pinson's hormone therapy and antianxiety medications.  (*Id.* at 9.)  Ms. Pinson further alleges that her request for gender-affirming surgery was denied on the warden's orders.  (*Id.*)

Ms. Pinson alleges that the discontinuation of her hormone therapy and antianxiety medications resulted in her hospitalization for chest pains.  (Compl. At 9.)  She further alleges that she was informed by the doctors in the emergency room that the current course of treatment could result in serious health problems, including "having a stroke, pulmonary embolism, or heart attack."  (*Id.*)  She also asserts that after receiving the news that her hormone therapy would be reduced and that her

---

[1] "A person's intrinsic sense of being male (a boy or a man), female (a girl or woman), or an alternative gender…."  World Professional Association for Transgender Health, *The Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People* ("*Standards of Care*") at 97 (7th ed. 2012).

[2] Publicly presenting as the individual's gender identity, rather than their sex assigned at birth.  University of California, San Francisco, *Transgender Care*, https://transcare.ucsf.edu/transition-roadmap (last visited May 22, 2020).

request for surgery was denied, she became suicidal.  (*Id.*)  She attempted suicide using a razor blade to cut her neck open, which caused serious injury.  (*Id.*)

Ms. Pinson seeks compensatory and punitive damages for the alleged actions of the staff at FMC Rochester.  (Compl. At 6.)  She also seeks an injunction compelling gender-affirming surgery, hormone therapy, psychotherapy, and several social transition provisions, including electrolysis, access to an electric razor, makeup products, female clothing, and housing in a female institution.  (*Id.*)

## B.    Facts Provided by the Defendants

When Ms. Pinson arrived at FMC Rochester, her medications were reviewed by Physician Assistant Bea Glavinovich, who renewed the following prescriptions:  (1) clonazepam for anxiety, with an additional dose as needed for agitation; (2) duloxetine for neuropathic pain control; (3) estradiol, to align Ms. Pinson's secondary sexual characteristics with her gender identity; (4) finasteride, to do the same; (5) pregabalin, for neuropathic pain control; (6) quetiapine, for mood; (7) spironolactone, to align Ms. Pinson's secondary sexual characteristics with her gender identity; and (8) topiramate, for mood.  (Decl. of John Daniels, MD., ECF No. 36, at ¶ 6; *id.* Ex. 3 at 200–208.)  Ms. Pinson received frequent adjustments to her medication regimen while incarcerated at FMC Rochester, as enumerated in the Defendants' brief supporting their Motion to Dismiss.  (ECF No. 32 at 9–25.)  Indeed, the record reflects many instances in which her medications were adjusted at Ms. Pinson's request.  (*See, e.g.,* Daniels Decl. ¶ 7; *id.* Ex. 3 at 362 (Ms. Pinson provides Dr. Anne Cuccio, Chief of Psychiatry, with a note titled "Ideal Medication Regimine"); *id* at 182 (adjusting Ms. Pinson's medications in line with her requests according to her "Ideal Medication" note); *see also id.* at 89–90 (prescribing a 30-day taper down of topiramate because Ms. Pinson believed it was not doing anything for her), 144 (adjusting anxiety medication based on new preference indicated by Ms. Pinson); 164–70 (indicating a willingness by Dr. Jordan to increase spironolactone to moderate testosterone levels); 174–75 (Dr. Cuccio and Ms. Pinson coordinating pain and sleep management medication).

In addition, the medical staff at FMC Rochester coordinated with Ms. Pinson to offer her hormone therapy for her gender dysphoria.  For example, on July 12, 2017, Dr. Bocanegra, Ms. Pinson's treating psychiatrist and PA Glavinovich met with

Ms. Pinson to discuss side effects and negative interactions between her numerous prescriptions as well as her treatment for gender dysphoria. (*Id.* at 120–25.) PA Glavinovich believed that Ms. Pinson was doing well on her current medication therapy, and Ms. Pinson agreed. (*See id.*) On July 18, 2017, Dr. Jordan increased Ms. Pinson's spironolactone upon her request. (*Id.* at 110.)

On January 3, 2018, Ms. Pinson submitted an inmate request to two separate email addresses, asking for assistance in obtaining gender-affirming surgery. Her email request to RCH/InmateToHealthSvcs was answered two days later, advising her to direct her request to RCH/InmateToMedicalDoctors or otherwise discuss her request with her primary care team. (Daniels Decl. ¶ 54; *id.* Ex. 3 at 350.) Her request to RCH/InmateToPsychologySvcs was answered by the Chief of Psychology, who told her he believed the request needed to go the Clinical Director, but that he would find out. (Daniels Decl. ¶ 55; *id.* Ex. 4.) It does not appear that Ms. Pinson ever made a request to RCH/InmateToMedicalDoctors or to her primary care team before being transferred from FMC Rochester on February 15, 2018. (Daniels Decl. ¶ 66.)

At the time of her transfer from FMC Rochester, Ms. Pinson was on the following medications: (1) bupropion; (2) clonazepam; (3) estradiol; (4) finasteride; (5) gabapentin; (6) perphenazine; (7) spironolactone; (8) trihexyphenidyl; and (9) mirtazapine. (Daniels Decl. ¶¶ 56, 58, *id.* Ex. 3 at 2, 9–15.)

## II.    Analysis

Ms. Pinson alleges medical malpractice pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2780, and violations of the First and Eighth Amendments pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 368 (1971). The Defendants argue that Ms. Pinson's complaint should be dismissed on several bases: lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, or, alternatively, under Rule 56 summary judgment.

### A.    Standards

The Defendants' motion implicates several different standards of review: the standard for dismissal for lack of subject-matter jurisdiction under Federal Rule of

Civil Procedure 12(b)(1); the standard for dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6); and the summary judgment standard under Rule 56.

### 1.    Rule 12(b)(1)

A party may assert that the Court lacks subject-matter jurisdiction over a lawsuit via a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Courts may look to factual issues beyond the pleadings to determine whether subject-matter jurisdiction exists without fully converting a 12(b)(1) motion into a motion for summary judgment. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). Jurisdiction is a threshold question, and should be decided as early as possible during a lawsuit. *Id.*

### 2.    Rule 12(b)(6)

"[A] complaint must contain sufficient factual allegations to '[s]tate a claim to relief that is plausible on its face'" in order to withstand a motion to dismiss under Rule 12(b)(6). *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). While "detailed factual allegations" are not required, the facts contained within a complaint must be specific enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin. Corp.*, 690 F.3d 951, 955 (8th Cir. 2012). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

Complaints written by pro se plaintiffs are held to "less stringent standards" than pleadings written by attorneys. *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). "[I]f the essence of an allegation is discernible…then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). However, a pro se complaint must still allege sufficient facts to state a viable claim. *Id.* at 914. "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the

complaint to be true and construes all reasonable inferences most favorably to the complainant." *Raynor*, 690 F.3d at 955.

### 3.    Rule 56

Except when determining subject-matter jurisdiction, if court considers matters outside the pleadings in addressing a motion to dismiss at this stage, Rule 12 requires that Rule 56 summary judgment standards be applied instead of the usual 12(b)(6) standard. *Osborn*, 918 F.2d at 729. Rule 12(d) requires that parties "be given a reasonable opportunity to present all the material that is pertinent to the motion" when a court treats a motion to dismiss as one for summary judgment. However, explicit notice of the possibility of conversion to a summary judgment framework is not required. Parties are considered to have constructive notice that a court will treat the motion as one for summary judgment "when the moving party states that it is moving for summary judgment and the parties submit and refer to materials outside the complaint." *Machen v. Iverson*, No. CIV. 11-1557 DWF/JSM, 2012 WL 566977, at *12 (D. Minn. Jan. 23, 2012), report and recommendation adopted, No. CIV. 11-1557 DWF/JSM, 2012 WL 567128 (D. Minn. Feb. 21, 2012) (quoting *Riehm v. Engelking*, 538 F.3d 952, 962 (8th Cir. 2008) (quotation marks removed)). However, courts must proceed cautiously when the case involves a pro se party, as they may be unaware of the consequences of failing to provide evidence in the face of a summary judgment motion. *Id.* (citing *Beacon Enter., Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983).

Here, the defendants explicitly stated in their opening brief that they were submitting materials outside of the pleadings, and that the Court, in considering those materials, would be required to convert the motion to one for summary judgment. (ECF No. 32 at 6–7.) The defendants clearly defined the summary judgment standard, and made arguments using it. They also submitted a significant number of materials outside of the pleadings. (*See* ECF Nos 34–42.) This court in *Machen* found that when a moving party makes these affirmative steps, sufficient constructive notice is provided, even when the nonmoving party is pro se. 2012 WL 566977 at *13. Further, Ms. Pinson also submitted materials outside the pleadings in her response to the defendants' motion. *See Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 949 (8th Cir. 1999) (finding no error in failing to give a non-moving party "formal notice" before converting motion where "the nonmoving party has submitted materials

outside of the pleadings in support of its resistance to a motion to dismiss."). Additionally, Ms. Pinson has not suggested that there are additional facts missing from the record or that require further development. *See id.* Against this backdrop, the Court finds that Ms. Pinson had adequate notice that the defendants' motion could be converted to a motion for summary judgment, and will apply the standards of Rule 56 to certain aspects of the pending motion.

A movant is entitled to summary judgment where "no genuine dispute as to any material fact [exists] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where no reasonable jury could find in favor of the non-movant, there is no genuine dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are only those "that might affect the outcome of the suit under the governing law." *Id.* Where there is a genuine dispute of facts, those facts should be viewed in the light most favorable to the non-moving party. *E.g.*, *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Id.*

The moving party must first "identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). It can satisfy its burden either by demonstrating evidence that negates an essential element of the non-movant's case or by showing that insufficient evidence exists to support the non-moving party's case. *Id.* Once the moving party has satisfied its initial burden, the responsibility shifts to the non-moving party to submit evidence of "specific facts showing the presence of a genuine issue for trial." *Id.* (citing *Torgerson*, 643 F.3d at 1042). In doing so, "[a non-moving party] may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor without resort to speculation, conjecture, or fantasy." *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790–91 (8th Cir. 2009) (quotations and citations omitted); *see also Frevert v. Ford Motor Co.*, 614 F.3d 466, 473 (8th Cir. 2010) ("[a] properly supported motion for summary judgment is not defeated by self-serving

7

affidavits." (quoting *Bacon v. Hennepin Cty. Medical Center*, 550 F.3d 711, 716 (8th Cir. 2008))).

### B.    Federal Tort Claims Act Claim

Ms. Pinson raises medical malpractice claims against the defendants Specifically, she alleges their liability under the Federal Tort Claims Act ("FTCA") for improperly discontinuing her hormone and antianxiety medications, and by refusing to permit her to undergo gender-affirming surgery.

The United States and its agencies are immune from suit under the doctrine of sovereign immunity unless such immunity has been waived. *Compart's Board Store, Inc. v. United States of America*, 829 F.3d 600, 604 (8th Cir. 2016) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). Absent a waiver of sovereign immunity, a federal court has no subject matter jurisdiction over claims made against the United States. *Meyer*, 510 U.S. at 475. The FTCA contains one such waiver of sovereign immunity. *Compart's*, 829 F.3d 604.; *see also* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances.").

However, the FTCA contained a statutory prerequisite to a federal court having jurisdiction over a tort claim. Specifically, under the FTCA, potential federal claims must first be presented to the implicated agency by way of an administrative claim. *See* 28 U.S.C. § 2675(a); 28 C.F. R. § 14.2(a). "[C]onformity with § 2675(a) is a jurisdictional term of the FTCA's limited waiver of sovereign immunity." *Mader v. United States*, 654 F.3d 794, 808 (8th Cir. 2011). When a plaintiff has failed to comply with the requirements of § 2675(a), the suit must be dismissed for lack of subject matter jurisdiction. *Id.* Only after an administrative claim has been brought and either a final denial by the agency has been issued or six months of inaction has passed can a lawsuit be brought in federal court. *Id.* Premature FTCA filings must be dismissed. *See McNeil v. United States*, 508 U.S. 106, 111 (1993); *Mader*, 654 F.3d at 797.

This jurisdictional requirement is a practical one. It "provides federal agencies a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit." *Mader*, 654 F.3d at 801. This allows for

more efficient use of limited court and federal agency resources, and resolves claims without resorting to costly litigation. Accordingly, an administrative claim does not fulfill the jurisdictional and practical presentment requirement unless it provides the agency with sufficient information to investigate the claim and the amount of damages sought. *Id.* at 799 (citing *Farmers State Savings Bank v. Farmers Home Administration,* 866 F.2d 276, 277 (8th Cir.1989)).

The defendants argue that Ms. Pinson did not comply with § 2675 and therefore dismissal of her medical malpractice claims is required. (Def. Mem. Supp. Mot. Dismiss, ECF No. 32 at 29.) In her original complaint, Ms. Pinson indicated that she had followed administrative grievance procedures for her FTCA claim by circling "Yes" to a series of yes or no questions regarding administrative remedies on a civil rights complaint form. (Compl. at 5.) However, in her response to the Defendants' Motion to Dismiss, she conceded that she had not brought an FTCA claim to the BOP before commencing the lawsuit. (ECF No. 50 at 2.) She implies that she has since brought the appropriate administrative grievances, but provides no further information regarding timing or the substance of the claim, or whether a final denial has been issued. Therefore, even if such an administrative claim was filed, the Court is unable to evaluate whether it meets the jurisdictional requirements of 28 U.S.C. § 2675(a). Establishing jurisdiction is the plaintiff's burden. *See Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993) ("Presentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimant."). Ms. Pinson has failed to carry her burden here.

Though Ms. Pinson holds the burden of establishing jurisdiction, the Defendants identified three administrative claims Ms. Pinson has filed as potentially relevant to the allegations in this case: (1) TRT-WXR-2018-05344 (the "5344 claim"); (2) TRT-WXR-2018-01471 (the "1471 claim"); and (3) TRT-WXR-2018-3731 (the "3731 claim"). (Declaration of Shannon Boldt, ECF No. 35, Exs. 27, 33, 34.) Ms. Pinson had the opportunity to address whether these administrative filings are relevant to the instant case, but did not do so.

The 5344 claim involves the discontinuation of Ms. Pinson's prescription for clonazepam, a drug used in the treatment of anxiety. This claim was denied by the BOP on June 19, 2018. (Boldt. Decl. Ex. 27.) However, this claim focused solely on

the conduct of staff at USP Tucson, not FMC Rochester. (*Id.*) Because this claim
could not have provided the BOP notice regarding any alleged misconduct by the
staff at FMC Rochester, the 5344 claim cannot fulfill the presentment requirement for
this lawsuit. *See Mader*, 654 F.3d at 799.

The 1471 claim fails for the same reason. This claim alleges the denial of
gender-affirming surgery, but does not name the defendants of this lawsuit. Indeed,
the only named individuals work at USP Tucson. (Boldt Decl., Ex. 33.) In addition,
the 1471 claim raises timeliness issues. Ms. Pinson filed the 1471 claim on December
17, 2018, one day before she filed this lawsuit. (*Compare* Boldt. Decl., Ex. 33 *with*
Compl., ECF No. 1.) The 1471 claim was denied on June 18, 2019. (Boldt. Decl.,
Ex. 33.) If this lawsuit were related to the 1471 claim, it was prematurely filed.
Furthermore, Ms. Pinson would likely be unable to correct this error, because an
FTCA claim must be filed in federal court six months after its administrative denial.
28 U.S.C.A. § 2401(b) ("A tort claim against the United States shall be forever barred
unless…action is begun within six months after the date of mailing, by certified or
registered mail, of notice of final denial of the claim by the agency to which it was
presented."). That date has since passed. For these reasons, the 1471 filing does not
satisfy the FTCA's administrative claim requirement.

Finally, the 3731 claim raises the same issues as the 1471 claim. The only
named actor is a "Dr. Ash," who is not a named defendant in this litigation, and
appears to be a doctor at USP Tucson (*see* Boldt. Decl. Ex. 27 (discussing the actions
of a Dr. Ash at USP Tucson)). Additionally, in the 3731 claim, Ms. Pinson alleges
that her Wellbutrin prescription was discontinued on April 5, 2019—well after this
lawsuit was filed. For these reasons, the 3731 claim also fails to satisfy the FTCA's
requirements.

In sum, Ms. Pinson's FTCA claim fails both on the face of the complaint and
when a deeper factual analysis is applied to it because she did not comply with
§ 2675(a). The Court has no subject matter jurisdiction over the FTCA claim.
Therefore, the claim should be dismissed without prejudice.[3]

---

[3] The defendants assert that in addition to the procedural flaws discussed above, Ms.
Pinson's FTCA claim must fail because she did not file an affidavit of expert review as
required by Minnesota Statutes section 145.682 subdivision 3. This, they argue, is an

### C.    Exhaustion of Administrative Remedies

In addition to failing to satisfy the administrative claim requirements of the FTCA, Ms. Pinson's failure to exhaust administrative procedures is a barrier to litigating her constitutional claims.  Under the Prisoner Litigation Reform Act ("PLRA"), inmates must exhaust their administrative remedies before filing a federal lawsuit regarding prison conditions.  42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S.Ct. 1850, 1856 (2016).  The only exception to this requirement is when such administrative remedies are "unavailable"—that is, they do not exist, or are made so impossible to obtain so as to render them nonexistent.  *Id.* at 1858–60 (listing three circumstances where remedies are rendered unavailable: where the process is a "dead end"; it is too complicated for any ordinary prisoner to navigate; or where grievances are thwarted via machination, misrepresentation, or intimidation.)  If administrative remedies were not exhausted before the lawsuit was filed, "dismissal is mandatory." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

Though the boxes Ms. Pinson circled on the prisoner complaint form allege that she exhausted her administrative remedies, she has provided no additional details to allow the Court to determine whether she has indeed done so.  In contrast, the government has provided a review of "Administrative Remedy" filings made by Ms. Pinson while incarcerated at FMC Rochester.  Only one such filing is relevant to this lawsuit: Administrative Remedy 928157-F1, which relates to the denial of Ms. Pinson's medication.  However, Ms. Pinson withdrew that Remedy and did not pursue any steps in the appeal process.  (Boldt Decl. ¶ 28.)  Administrative exhaustion requires "using all the steps that the agency holds out, and doing so properly (so that

---

independent reason to deny her FTCA claim.  Ms. Pinson disagrees, arguing that under the Supreme Court's recent decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), she should be exempt from the expert affidavit requirement because it conflicts with Federal Rule of Civil Procedure 8.  While the question is interesting and well-briefed by both parties, the Court determines that is ultimately unnecessary to address it because it has already found that Ms. Pinson's FTCA claims cannot survive for lack of subject matter jurisdiction.  The courts do not generally "wade into *Erie*'s murky waters" unless absolutely necessary.  *Shady Grove*, 559 U.S. at 398.  Because there is an independent reason to deny Ms. Pinson's FTCA claims, it does not recommend an answer to the *Shady Grove* question.

the agency addresses the issues on the merits).”  *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).  Accordingly, Ms. Pinson did not exhaust her administrative remedies as required by the PLRA.

In response to the defendants’ Motion to Dismiss, Ms. Pinson alleges that she filed an informal remedy request, thus satisfying the exhaustion requirements.  (ECF No. 50.)  Specifically, she claims that her counselor, identified as G. Balas, processed an “informal resolution” concerning the denial of gender-affirming surgery.  (Pinson Decl., ECF No. 50-1 at ¶ 2.)  She writes that Ms. Balas gave her a “Request for Administrative Remedy” form, which Ms. Pinson says she filled out and delivered to Ms. Balas on or about January 12, 2018.  (*Id.* at ¶ 3.)  She states that other individuals within the BOP not named as defendants told her that she should reconsider the Request, because it would “stir up a firestorm in the Trump administration,” and could result in her transfer to a more dangerous institution.  (*Id.* at ¶ 4.)  She states that they held her Request form to discuss it further on February 20, 2018.  (*Id.*)  However, shortly before that scheduled meeting, Ms. Pinson was transferred to USP Tucson.  (*Id.* at ¶ 6.)

It is unclear to the Court if Ms. Pinson’s intention is to add additional allegations to her complaint in order to meet the exhaustion requirement of the PLRA, or if these facts are intended to demonstrate that the unavailability exception to the exhaustion requirement should apply in her case.  However, neither interpretation saves Ms. Pinson’s claims.

If Ms. Pinson intended to add new allegations to her complaint, the Court finds that this is the incorrect mechanism to do so.  Allegations made in subsequent legal memoranda should not be used to correct deficiencies within a complaint.  *Martin v. ReliaStar Life Ins. Co.*, 710 F. Supp. 2d 875, 887 (D. Minn. 2010).  “To hold otherwise would mean that a party could unilaterally amend a complaint at will.”  *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (citation omitted).

If Ms. Pinson intended to argue that administrative remedies were unavailable to her, this argument also fails.  As discussed above, the only exception to the exhaustion requirement under the PLRA is when administrative remedies are unavailable due to impossibility, unreasonable complexity, or are purposefully

12

thwarted. *Ross*, 136 S. C.t at 1856. The facts provided by Ms. Pinson in her declaration do not support a finding of any of these circumstances. Though Ms. Pinson asserts that she was threatened with transfer to a different facility if she did not withdraw her Request, she did not actually withdraw it. (Pinson Decl. at ¶ 5.) Thus, the intimidation alleged by Ms. Pinson did not actually thwart her attempt to exhaust her remedies. The apparent failure of staff to submit her Request when she delivered it to her counselor is a closer call, but the Court ultimately finds that her attempt to pursue an administrative remedy was not rendered unavailable by those actions. Ms. Pinson states in her declaration that the intention was to hold off on submitting the Request until February 20, 2018 when it could be discussed further. (*Id.* at ¶ 4.) However, before this could happen, she was transferred. Ms. Pinson does not argue that this transfer was done specifically to avoid having to discuss her Request further, nor does she draw any factual link between the two. And she never suggests that she was unable to file an appropriate administrative remedy in Tucson. On these facts, the Court is unable to conclude that administrative remedies were unavailable to Ms. Pinson. Dismissal for failure to exhaust is therefore warranted.

### D.    First Amendment Retaliation Claim under *Bivens*

Ms. Pinson also alleges that the defendants violated her constitutional rights by discontinuing medications and denying gender affirming surgery in retaliation for "clashing" with BOP staff. She relies on *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), to support her damages claim. In *Bivens*, the Supreme Court recognized an implied cause of action for damages directly under the authority of the United States Constitution, particularly where there is no statute that otherwise creates a cause of action.

Recently, the Supreme Court significantly restricted circumstances in which a *Bivens* action may be brought. *See Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017). To determine whether damages are available under *Bivens*, the Court must first decide whether the claim arises in a context that has previously given rise to relief under *Bivens*, or if it alleges a new application of the cause of action. *Id.* at 1864. Under *Abbasi*, if "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], it arises in a new context." *Id.* If so, prior to applying *Bivens*, the Court must consider if there is an alternative process that already exists for

13

protecting the relevant interest.  *Id.* at 1858.  In addition, the Court considers any "special factors counseling hesitation" before permitting a new *Bivens* claim to proceed.  *Id.* at 1857.

Ms. Pinson's First Amendment retaliation claim seeks to apply *Bivens* in a new way.  Previously, the Supreme Court has only recognized three claims under *Bivens*: (1) A Fourth Amendment claim against federal law enforcement after they handcuffed a man in his home without a warrant, *Bivens*, 403 U.S. at 388; (2) a Fifth Amendment claim against a Congressman for an alleged act of gender discrimination, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) an Eighth Amendment claim against prison officials for failure to provide medical care to an inmate with asthma, *Carlson v. Green*, 446 U.S. 14 (1980).  "[E]xpanding the *Bivens* remedy is now a 'disfavored' judicial activity," and the Court has regularly declined to do so in recent years.  *Abbasi*, 137 S.Ct. at 1857 (citing *Iqbal*, 556 U.S. at 675); *see also id.* (collecting cases).  A First Amendment retaliation claim is certainly meaningfully different from the other recognized *Bivens* actions, so the Court must progress to the next considerations in the test to determine if expanding the *Bivens* remedy is appropriate.

The Court determines that application of *Bivens* is not warranted here.  Ms. Pinson has alternative methods to seek relief under, rather than a *Bivens* action.  As thoroughly discussed throughout this opinion, Ms. Pinson may avail herself of administrative remedies, through which "allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001).

Finally, the Court is mindful of the economic and governmental concerns identified by the Court in *Abbasi*, which act as "special factors counseling hesitation." These include: (1) the cost of defending claims against federal officials; (2) the responsibility of Congress to determine whether monetary and other liabilities should be imposed upon federal actors; and (3) the time, administrative costs, and other resources used during a lengthy period of litigation.  *Abbasi*, 137 S.Ct. at 1856.  Here, these concerns weigh in the favor of leaving the current *Bivens* landscape untouched. In particular, Congress has provided the BOP with the authority to determine their own policies regarding medical and mental health treatment, and the processes to follow if an inmate is dissatisfied.  To permit a new *Bivens* claim in this context could

unnecessarily increase litigation where procedures already adequately protect inmates' rights. Additionally, numerous other courts faced with this question have also found that recognizing a *Bivens* claim in the First Amendment retaliation context is not warranted. *See Buenrostro v. Fajardo*, 770 F. App'x 807, 808 (9th Cir. 2019); *Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018); *Vanderklok v. United States*, 868 F.3d 189, 208 (3d Cir. 2017).

Ms. Pinson's *Bivens* claim for alleged violations of her First Amendment rights is not recognized, and the Court finds that expanding the *Bivens* cause of action here is not warranted. Accordingly, her claim for damages arising out of any alleged violations of her First Amendment rights should be dismissed.

### E.    Failure to State a Claim

Finally, Ms. Pinson's claims, including those seeking injunctive relief, fail because the facts as alleged do not establish a violation of a constitutional right.[4] As to the *Bivens* claims, these failures act as an independent basis upon which the Court recommends their dismissal.

#### 1.    First Amendment Retaliation Claim

As discussed above, Ms. Pinson's claims fail because she has not exhausted her administrative remedies and, with respect to her First Amendment claim, it is not recognized under *Bivens*. Even if neither of these bases for dismissal were present, Ms. Pinson cannot establish a First Amendment retaliation claim.

---

[4] The Defendants argue that they are entitled to qualified immunity. Courts consider two factors when determining if qualified immunity should apply: (1) whether the facts as alleged (or demonstrated), construed in the light most favorable to the plaintiff, establish a violation of a constitutional right; and (2) whether that constitutional right was clearly established at the time of the violation. *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013). Because the Court determines that Ms. Pinson has failed to state a claim upon which relief can be granted, which is essentially coextensive with the first factor of qualified immunity, it need not discuss qualified immunity further.

"To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). With respect to the third prong, the plaintiff must demonstrate that the retaliatory motive was a "substantial factor" of the adverse action. *Id.* (citing *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010)). In other words, the plaintiff must show that she would not have suffered the adverse action but for her protected activity. *Id.*; *see also Hartman v. Moore*, 547 U.S. 250, 256 (2006).

Because the Court relies on information outside the pleadings, it evaluates this claim under a summary judgment standard. *See* Fed. R. Civ. P. 12; *Osborn*, 918 F.2d at 729. A movant is entitled to summary judgment where "no genuine dispute as to any material fact [exists] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, Ms. Pinson cannot demonstrate an adverse action. Though she alleges that her medications and hormone therapy were discontinued because of clashes between herself and the wardens of FMC Rochester, this is not accurate. Medical records clearly demonstrate that Ms. Pinson was never removed from her medications, though they were regularly adjusted, often at Ms. Pinson's request. Nor was she ever denied gender-affirming surgery. After originally asking the wrong individuals, she was directed to speak to the physicians who could make such a decision: Dr. Jordan and Dr. Hadaway. However, she did not make that request before she was transferred to USP Tucson. Indeed, Ms. Pinson does not even allege that she ever requested gender-affirming surgery from anyone. (*See generally*, Compl.)

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Id.* Here, Ms. Pinson's version of the facts is explicitly disproven by the record, which shows that no adverse action occurred. Because Ms. Pinson cannot establish a required element of a First Amendment retaliation claim, her claim must be dismissed.

16

## 2. Eighth Amendment Deliberate Indifference

To survive a motion to dismiss, a claim of deliberate indifference to medical needs in violation of the Eighth Amendment must allege that the plaintiff suffered from a serious medical need and that the defendant was subjectively aware of it and knew that failing to treat it would pose an excessive risk to the inmate's health or safety, but delayed or denied treatment for it regardless of the risk. *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014). However, a mere disagreement with a course of treatment does not demonstrate deliberate indifference. *See Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007). Ms. Pinson's Eighth Amendment claims can be fairly divided into three categories: deliberate indifference to mental health needs; deliberate indifference to her need for hormone therapy; and deliberate indifference to her need for gender-affirming surgery. The Court finds that none of these claims survive the Defendants' Motion to Dismiss.

With respect to Ms. Pinson's mental health needs, her claim of deliberate indifference fails for several reasons. She claims that the defendants improperly discontinued her mental health medications. However, she has not alleged that the named defendants were responsible for prescribing or altering such medications. In a lawsuit against a governmental actor, that official must have violated the Constitution through their own actions. *Iqbal*, 556 U.S. at 676 (2009). Because Ms. Pinson fails to articulate a specific claim against the particular defendants, dismissal is warranted.

Furthermore, considering the factual record submitted by the defendants, Ms. Pinson's claims also fail under the more stringent summary judgment standard. The medical records provided by the defendants demonstrate that Ms. Pinson was never removed from all of her psychiatric medications. Indeed, Ms. Pinson regularly met with her treating psychiatrist to adjust her medications, and changes were often made at her request. (Daniels Decl. ¶ 67). Even if Ms. Pinson disagrees with some of the medication changes made, the Court cannot find that the defendants were deliberately indifferent to her serious medical needs when they were actively treating her for those conditions, and working with her to do so. *See Meuir*, 487 F.3d at 1118 (treatment disagreement is not deliberate indifference).

Ms. Pinson's claim regarding the discontinuation of her hormone therapy fails for the same reasons.  As above, she has not plead how the particular defendants violated her rights through their own actions.  Her claim fails for this reason alone.  In addition, once again the records provided by the defendants belie her assertions.  Though her hormone therapy was regularly adjusted during her time at FMC Rochester, it was never while she was discontinued there.  On these facts, Ms. Pinson cannot sustain a claim for Eighth Amendment deliberate indifference.  *See Martinson v. Leason*, 22 F. Supp. 3d 952, 962 (D. Minn. 2014) (noting that evidence of adequate medical care weighs strongly against a finding of deliberate indifference).

Ms. Pinson's claim regarding the failure to grant her gender-affirming surgery fails as well.  Again, Ms. Pinson has not plead that the defendants individually violated her rights.  And again, the medical records provided by the defendant demonstrate that while Ms. Pinson did request gender-affirming surgery, she originally contacted the wrong individuals.  She was told to direct the request to Dr. Jordan and Dr. Hadaway, both defendants here, but apparently did not do so before her transfer to USP Tucson.

Because none of Ms. Pinson's allegations regarding the defendants in this case are adequately plead, and because the Defendants' actions are not cognizable as an Eighth Amendment violation, those claims should be dismissed.

## F.      Motion to Amend the Complaint

Ms. Pinson's Motion to Amend the Complaint does not save her claims.  Her amended Complaint seeks to add four new defendants to the case:  former Attorney General Jefferson Sessions; Dr. Elizabeth Stahl, a BOP physician who is employed at FCC Allenwood, in Pennsylvania; Mark Inch, the former director of the BOP, and Officer Sprenger, a correctional officer at FMC Rochester.  She also seeks to add a new Fifth Amendment claim, a claim for assault or battery pursuant to the FTCA, and additional injunctive relief.  (ECF No. 51.)

Ms. Pinson alleges that Mr. Sessions, Mr. Inch, and Dr. Stahl instructed FMC Rochester physicians Dr. Hadaway and Dr. Jordan to falsify Ms. Pinson's medical records for the purposes of denying her gender-affirming surgery.  She also asserts

that Mr. Inch unlawfully denied Ms. Pinson placement in a female facility. Finally, she alleges that Officer Sprenger offered her a razor for shaving, despite knowing she was suicidal. She asserts that she later severely harmed herself with that razor.

### 1.    Standard for Amendment

A party may amend a complaint only with the opposing party's consent or with leave of court. Fed. R. Civ. P. 15(a)(2). Leave to amend should be given freely when justice so requires; however, the right to amend is not absolute. *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005). A court should deny such leave when the proposed amendment is futile. *E.g., Foman v. Davis*, 371 U.S. 178, 182 (1962). When the amended complaint could not survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), that amendment is futile. *E.g., Munor v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th Cir. 2018).

### 2.    Failure to State a Claim

As discussed above, a complaint must contain factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Conclusory statements do not suffice. *Iqbal*, 556 U.S. at 678. In addition, a complaint must "give the defendants fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Here, Ms. Pinson's amended complaint cannot meet these standards.

Though Ms. Pinson invokes the Fifth Amendment, it is entirely impossible to determine from the complaint how she alleges her Fifth Amendment rights were violated, what actions underly the alleged violations, or which defendants might have caused them. Because the complaint does not give fair notice of what the claim is or the grounds upon which it rests, Ms. Pinson's motion to amend to add a Fifth Amendment claim is futile and should be denied.

Ms. Pinson's attempt to add additional defendants Mr. Inch, Dr. Stahl, and Mr. Sessions fails as well. Ms. Pinson alleges that these defendants had instructed Dr. Hadaway and Dr. Jordan to not provide her gender-affirming surgery. But this conclusory statement does not "raise [the] right to relief above the speculative level."

*Twombly*, 550 U.S. at 555.  And, as mentioned above, the record reflects that during her time in Minnesota, Ms. Pinson did not properly request the procedure, nor was it formally denied.  Accordingly, Ms. Pinson's motion to amend to add these defendants must be denied.

Finally, Ms. Pinson's allegations against Officer Sprenger are futile.  The Court is unsure of the exact nature of Ms. Pinson's claim against Officer Sprenger. However, reading the complaint liberally, it believes that Ms. Pinson alleges that Officer Sprenger provided her with a razor when he knew she was suicidal, constituting negligence or assault and battery pursuant to the FTCA.  These claims fail because Ms. Pinson has not alleged that she has first exhausted her administrative remedies as is required by the FTCA.  *See discussion*, *supra*; 28 U.S.C. § 2675(a). Because she has failed to comply with the requirements of section 2675, the Court has no jurisdiction over these claims.

### G.    Motion for Preliminary Injunction

Last, the Court considers Ms. Pinson's Motion for Preliminary Injunction. (ECF No. 65.)  Ms. Pinson alleges that the BOP is continuing to retaliate against her by refusing to transfer her from USP Tucson, where she is currently incarcerated, back to FMC Rochester.  To the extent that it is not rendered moot by the rest of this Court's recommendation that her complaint be denied, the Court finds that this motion is meritless, and recommends that it be denied.

#### 1.    Standard

When deciding whether to grant a preliminary injunction, the Court must consider the four *Dataphase* factors:  (1) the likelihood of success on the merits; (2) the threat of irreparable harm to the movant if no injunction is granted; (3) the balance of harms between the harm to the movant if the injunction is not granted and that of the nonmovant if it is; and (4) the public's interest.  *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  Though no single factor is determinative, the likelihood of success on the merits is the "most significant" factor of the *Dataphase* test.  *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013).

2.    *Dataphase* Factors

Here, Ms. Pinson's likelihood of success is vanishingly small.  The BOP is the sole authority for determining an inmate's placement at any facility.  18 U.S.C. § 3621(b); *see also United States v. Kattom*, 619 F. App'x 569 (8th Cir. 2015) ("We note that the court lacked authority to order placement at any particular facility….")  Thus, this Court cannot order the relief Ms. Pinson is seeking.

Although the analysis could stop there, another of the remaining *Dataphase* factors also supports denying the motion for preliminary injunction.  Ms. Pinson has not demonstrated any irreparable harm she will suffer if the injunction is not granted.  Though she claims she has been retaliated against for litigating, she is still actively litigating this case (and perhaps others), so her ability to do so has not been curtailed in any way that the Court can see.  Further, she has no right to be incarcerated at FMC Rochester, and even if she did, there is no reason to believe that she could not be transferred to that facility at a later time.  In sum, even were the Court not recommending dismissal of the lawsuit, it would certainly recommend denial of Ms. Pinson's motion for an injunction.

## III.    Recommendation

For the reasons set forth above, the Court concludes that Ms. Pinson's claims cannot survive the Defendants' Motion to Dismiss.  Accordingly, the Court makes the following recommendations:

1.    The Defendants' Motion to Dismiss (ECF No. 30) be GRANTED;
2.    Ms. Pinson's Motion to Amend (ECF No. 51) be DENIED;
3.    Ms. Pinson's Motion for Preliminary Injunction (ECF No. 65) be DENIED.

Date:  July 13, 2020                              s/*Katherine Menendez*
                                                            Katherine Menendez
                                                            United States Magistrate Judge

## NOTICE

Filing Objections: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

Under Advisement Date: This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.